**Lloyd E. GRASS,
Petitioner/Appellant/Cross–Respondent,**

v.

**STATE of Missouri,
Respondent/Respondent/Cross–
Appellant.**

**Nos. ED 87708, ED 87751,
ED 87792, ED 87816.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 27, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 12, 2007.

Application for Transfer Denied
May 29, 2007.

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Irene Karns, Columbia, MO, for appellant.

Ronald Q. Smith, Assistant Attorney General, Springfield, MO, for respondent.

Before ROY L. RICHTER, P.J., KATHIANNE KNAUP CRANE, J., and SHERRI B. SULLIVAN, J.

PER CURIAM.

Petitioner, who is in the custody of the Department of Mental Health after having pleaded not guilty by reason of mental disease to the murder of his wife, filed applications for conditional and unconditional release. The trial court entered a judgment that denied petitioner's application for unconditional release but granted petitioner's application for conditional release. Both parties appeal. Petitioner appeals from that part of the judgment denying his application for unconditional release. The state appeals from that part of the judgment granting petitioner's application for conditional release. We affirm that part of the judgment denying the application for unconditional release, and we reverse and remand that part of the judgment granting the application for conditional release.

*FACTUAL AND PROCEDURAL BACKGROUND*

On October 14, 1992, petitioner, Lloyd E. Grass, stabbed his wife to death. He

was immediately evaluated as "markedly psychotic" at Malcolm Bliss Mental Health Center and admitted to the Biggs Forensic Center of Fulton State Hospital that same day. On October 20, 1992 he was returned to jail with a discharge diagnosis of Brief Reactive Psychosis, Resolved (Provisional); Cannabis Dependence, In Remission While Hospitalized; and Delirium, Resolved (Provisional). The state charged him with murder in the first degree in Warren County. On November 9, 1993, petitioner was readmitted to the Biggs Forensic Center of Fulton State Hospital for a court-ordered pretrial mental evaluation.

Richard Gowdy, Ph.D., who was then a certified forensic examiner for the Biggs Forensic Center, saw petitioner for a pre-trial mental evaluation on November 9, 1993 and again on July 19, 1994. Dr. Gowdy diagnosed him with Psychotic Disorder, Not Otherwise Specified, In Partial Remission. Dr. Gowdy provided the court with his opinion that as a result of a mental disease, petitioner did not fully know and appreciate the nature, quality and wrongfulness of his conduct and was unable to conform his conduct to the requirements of the law at the time of his wife's death. In September 1994, the Warren County circuit court accepted petitioner's plea of not guilty by reason of mental disease or defect and committed him to the custody of the Missouri Department of Mental Health, which placed him in the Biggs Forensic Center of the Fulton State Hospital.

Subsequently, on March 16, 1995, the Department of Mental Health transferred him to the less restrictive St. Louis State Hospital. In October 1995, petitioner filed a petition with the probate division of the Circuit Court of the City of St. Louis to obtain a conditional release. That court granted the conditional release, but this court reversed. *Grass v. Nixon,* 926 S.W.2d 67, 68 (Mo.App.1996).

On August 8, 1996, petitioner was granted full unescorted privileges. The next day, petitioner escaped from the St. Louis State Hospital. After being arrested in New York, petitioner was extradited to Missouri. Petitioner was thereafter convicted of escape from commitment and sentenced to a term of five years in the custody of the Missouri Department of Corrections. After serving twenty-eight months in prison, petitioner was paroled back to the custody of the Department of Mental Health in March 2001.

In February 2003, petitioner filed an application for unconditional release,[1] which the trial court denied. After this court affirmed that judgment, the Missouri Supreme Court granted petitioner's application for transfer and reversed and remanded for the trial court to determine the independence of the expert appointed to examine the petitioner and make a recommendation about his suitability for release. *Grass v. State,* 134 S.W.3d 34, 35 (Mo. banc 2004).

In August 2004, petitioner filed new *pro se* motions for conditional and unconditional release, and counsel filed amended applications for release. The trial court consolidated the applications and tried the cases in February 2005. On February 1, 2006, the trial court entered findings of fact, conclusions of law, and a judgment. In response to the state's post-opinion motion, the trial court later entered an amended judgment. The court denied petitioner's application for unconditional release but granted petitioner's application for conditional release. Petitioner and the state appeal.

---

1. Petitioner has made other applications, but we do not list them here.

## DISCUSSION

### PETITIONER'S APPEAL

■ In his sole point on appeal, petitioner contends that the trial court erroneously applied Section 552.040 RSMo (2000) when it denied his petition for unconditional release. Petitioner argues that the law requires his unconditional release because the trial court made findings in its judgment on his application for conditional release that petitioner proved by clear and convincing evidence that: 1) he does not currently suffer from a mental disease or defect; 2) he is not a danger to himself or others and is not likely in the foreseeable future to commit another violent crime because of mental illness; and 3) he is aware of the nature and wrongfulness of the crime underlying his commitment and currently has the capacity to conform his conduct to the requirements of the law.

■ When we review a judgment on an application for unconditional release, we affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *See State v. Revels*, 13 S.W.3d 293, 297 (Mo. banc 2000) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

■ Section 552.040.7 governs the procedure for a hearing on an application for unconditional release. Subsection (6) of this statute provides in part:

> The burden of persuasion for any person committed to a mental health facility under the provisions of this section upon acquittal on the grounds of mental disease or defect excluding responsibility shall be on the party seeking unconditional release to prove by clear and convincing evidence that the person for whom unconditional release is sought does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others.

Section 552.040.7(6). Clear and convincing evidence is evidence that instantly tilts the scales in the affirmative when weighed against the opposing evidence and that leaves the fact finder with the abiding conviction that the evidence is true. *Marsh v. State*, 942 S.W.2d 385, 390 (Mo. App.1997).

Section 552.040.9 further requires that "[n]o committed person shall be unconditionally released unless it is determined through the procedures in this section that the person does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others." *See State v. Gratts*, 112 S.W.3d 12, 18 (Mo.App.2003); *see also State v. Weekly*, 107 S.W.3d 340, 346 (Mo. App.2003).

In its findings, conclusions, and judgment on the application for conditional release, the trial court found that petitioner "does not suffer from any mental disease or defect as set forth in Chapter 552 RSMo," [2] "is not likely to be dangerous to others while on conditional release," [3] "is not now and is not likely in the reasonable future to commit another violent crime against another person because of his mental illness," [4] and "is aware of the nature of his violent crime committed against another person and presently possesses the capacity to appreciate the criminality of his violent crime against another person and his capacity to conform to the requirement

---

**2.** *See* section 552.010.

**3.** *See* section 552.040.12(6).

**4.** *See* section 552.040.20(1).

of the law in the future."[5] However, it did not make the finding required by sections 552.040.7(6) and 552.040.9 for unconditional release that petitioner was not likely *in the reasonable future* to have a mental disease or defect rendering him *dangerous to the safety* of himself or others. This is a different factual finding from those required for conditional release, and it is not encompassed by the findings made on conditional release. The "reasonable future" is a broader time frame than "while on conditional release," and "dangerous to the safety of himself or others" is a broader condition than "likely ... to commit another violent crime" against another. Thus, the trial court's findings on conditional release do not mandate petitioner's unconditional release.

▆ In the argument under this point, petitioner also argues that insufficient evidence supports the trial court's decision to deny unconditional release.[6] We disagree.

Because the court relied heavily on the three expert witnesses[7] to support its denial of unconditional release, we start our analysis with these experts' reports and testimony. The court retained Jeffrey Kline, Ph.D., a psychologist for the Department of Mental Health, to do a mental evaluation of petitioner. Dr. Kline reviewed petitioner's legal and medical records and examination reports, read research studies on violence risk assessment, and had two interviews with petitioner for a total of 225 minutes. In considering conditional release, Dr. Kline found that

"an important component to ensuring the safety of others," if petitioner would be released, "is dependent upon his ability to either self monitor his psychiatric symptoms or comply with monitoring ordered by the court." In recommending against unconditional release, he found petitioner had not demonstrated an adequate ability to self-monitor. His written conclusion was:

2. *Suitability for Unconditional Release*

While Mr. Grass' risk for relapse of his symptoms is minimal he has not demonstrated an adequate ability to monitor his own behavior in order to assure that if he does have a relapse in symptoms of psychosis in the future that he will be able to manage those symptoms appropriately. In part, his lack of ability is based in part on the fact that he has not been observed to suffer any symptoms of psychosis so in essence has not had an opportunity to demonstrate an adequate ability. It should be noted though that while his risk of symptom relapse is minimal, it is still present and therefore transfer from an intermediate security hospital with constant supervision to an unsupervised setting of an unconditional release is not warranted. The etiology of Mr. Grass' psychosis is ultimately unknown and therefore long term predication somewhat more difficult.

With the above issues in mind, within a reasonable degree of psychological certainty, this examiner cannot find that

---

5. *See* Section 552.040.20(2).

6. Ordinarily we would not review this argument because it was not contained in the point relied on. *Mullenix–St. Charles Props. v. St. Charles*, 983 S.W.2d 550, 559 (Mo.App. 1998). However, because of the importance of this case and because the state responded to this argument in its brief, we exercise our discretion to review it.

7. The court found, and the parties stipulated, that each of the following was an expert authorized to testify as an independent expert: Richard Gowdy, Ph.D., the state's witness; Daniel J. Cuneo, Ph.D., petitioner's witness; and Jeffrey Kline, Ph.D., appointed by the court.

Mr. Grass is unlikely to have a mental disease or defect rendering him a[sic] dangerous to the safety of himself or others within the reasonable future. Therefore, within a reasonable degree of psychological certainty, this examiner finds Mr. Grass is not suitable for an unconditional release.

At trial, Dr. Kline testified that he recommended against an unconditional release because he concluded that petitioner's behavior in the hospital showed an inadequate ability to monitor his own behavior. The court examined Dr. Kline and asked if it was his opinion that petitioner was "not likely to be violent or dangerous in the future." Dr. Kline answered, consistent with his report, that he did not see "any risk factors beyond the index crime that would increase his risk for violent acts *while on conditional release*" (emphasis added). He did not assent to that part of the court's question asking if petitioner was not likely to be dangerous or violent "in the future."

The state retained Dr. Gowdy, who had previously evaluated petitioner in 1993, 1994, and 2001, to complete a mental evaluation of petitioner. At the time of trial, Dr. Gowdy was the Director of Forensic Services for the Department of Mental Health and a certified forensic examiner at the Fulton State Hospital. Dr. Gowdy reported on petitioner's likelihood of violent crime because of mental illness as follows:

Mr. Grass is not participating in treatment hindering a full analysis of his current mental condition and likelihood of future dangerousness. He lacks insight into the nature of his illness and therefore does not have a viable relapse prevention plan. His lack of cooperation with inpatient treatment suggests that he would not submit to the community monitoring necessary to ensure that he does not become dangerous due to the reemergence of psychotic symptoms. He continues to fast, an extremely risky and dangerous behavior since he was fasting prior to the index offense.

At trial, Dr. Gowdy testified that he recommended against unconditional release. He testified that he could not say within a reasonable degree of medical certainty "whether he is not now, and not unlikely in the reasonable future, to commit another violent crime against another person because of his mental illness."

Petitioner retained Daniel J. Cuneo, Ph. D., a clinical psychologist, for a mental evaluation. Dr. Cuneo's written opinion concluded:

Therefore, it would be my opinion that Mr. Lloyd Grass does not have a mental illness at the present time and it is not likely in the reasonably [sic] future for him to have a mental disease or defect that would render him dangerous to the safety of himself or others.

I could not recommend an unconditional release for Mr. Grass at this time. He has been in a jail, prison, or a secure hospital setting continuously since January 1997.

I would recommend that he receive a conditional release and this will serve as a means to reintegrate him back into society. I would recommend that he be placed in a community halfway house and be followed by a forensic case manager. I would also recommend that he receive periodic drug testing as his past use of substances may have played a role in his psychosis.

At trial, Dr. Cuneo testified that it was not likely in the reasonable future that petitioner would have a mental disease that would render him dangerous to others. He also testified:

First of all, Mr. Grass, at the current time if he is not mentally ill, he is not reasonably expected to inflict serious physical harm upon himself or others in the near future, he is drug free at the current time, steps can be made to continue to monitor whether he is drug free and keep dropping him to make sure as part of the forensic monitor.

However, he did not recommend an unconditional release because the residual effects of petitioner's lengthy incarceration would require an initial period of continuing oversight. He further testified that when petitioner was acutely psychotic, he had been abusing marijuana. He reported that, although no cause had been definitively established, mental health professionals had opined that petitioner's drug abuse was one of the factors that triggered his psychotic behavior. He recommended conditional release with drug testing every thirty days.

In its findings on petitioner's application for unconditional release, the trial court reported that it relied heavily on the three expert witnesses and that each opined that petitioner should not be considered for unconditional release.[8] The court further found and concluded that petitioner "[did] not meet the statutory factors and considerations of relevant credible evidence meeting the burden of proof of 'clear and convincing,' and it is, therefore, the judgment of the court that Petitioner's Petition for Unconditional Release is hereby denied."

Substantial evidence in the record supports the trial court's decision to deny unconditional release and to not find that clear and convincing evidence supported the criteria in sections 532.040.7(6) and 552.040.9 for unconditional release. Dr.

Kline opined that he could not say within a reasonable degree of medical certainty that petitioner was not likely to have a mental illness in the near future rendering petitioner dangerous to the safety of others. He explained that court-ordered monitoring of petitioner's psychiatric symptoms was necessary to assure the safety of others because petitioner had not demonstrated the ability to monitor his own behavior. Dr. Gowdy testified that petitioner could not meet the higher standard in that he could not say that petitioner was unlikely to commit a violent crime in the reasonable future. He did not believe that petitioner had the insight to monitor himself, nor did he think that community monitoring would be effective due to petitioner's lack of cooperation with inpatient treatment. Although Dr. Cuneo testified that in the reasonable future petitioner was unlikely to have a mental disease or defect that would render him dangerous to himself or others, he qualified his opinion by recommending a conditional release with periodic drug testing because drug use may have triggered petitioner's psychosis.

As explained in *Weekly,* unconditional release involves a total loss of the Department of Mental Health's jurisdiction and is not appropriate if illegal drug monitoring is required to prevent a relapse into a drug-induced psychosis. *Weekly,* 107 S.W.3d at 349–50. "The propensity of a committed person to become a danger to the community while on unconditional release must be heavily weighed against the committed person's interest in personal liberty." *Id.* at 350. "It is appropriate, under section 552.040, to deny unconditional release to a patient that has shown the

8. The court also referred to Dr. Hunter's opinion. Dr. Hunter did not testify on the question of release at trial. His 2004 forensic release request was admitted at trial but was not provided in the record on appeal.

inability to provide for his or her own mental health without supervision when there is likelihood that the patient will become psychotic and dangerous." *Id.* Here, all of the experts agreed that monitoring of drug use or psychiatric symptoms was required to prevent a relapse.

The trial court did not erroneously apply section 552.040 in denying unconditional release, and its decision is supported by substantial evidence. The judgment denying unconditional release is affirmed.

## STATE'S APPEAL

### I. *Conditional Release*

For its first point, the state asserts that the trial court erred in granting petitioner's application for conditional release because petitioner failed to meet his burden of proving by clear and convincing evidence that he was entitled to conditional release pursuant to section 552.040. The state argues that petitioner failed to prove by clear and convincing evidence that he was not mentally ill, he was not a danger to himself or others, he was not likely in the reasonable future to commit another violent crime because of mental illness, and he was aware of the nature and wrongfulness of the crime underlying his commitment and currently had the capacity to conform his conduct to the requirements of the law. We begin with the claim that petitioner did not prove by clear and convincing evidence that he was not likely in the reasonable future to commit another violent crime against another person because of his mental illness.[9]

Because petitioner was committed upon acquittal on the grounds of mental disease or defect excluding responsibility for murder in the first degree, Chapter 552 provides that he shall not be eligible for conditional or unconditional release unless the court finds he meets additional criteria, including the following:

(1) Such person is not now and is not likely in the reasonable future to commit another violent crime against another person because of such person's mental illness;

Section 552.040.20(1).

In its judgment, the court identified the findings and opinions of psychologists and psychiatrists that supported its conclusions. On the section 552.040.20(1) issue of whether petitioner was likely in the reasonable future to commit another violent crime against another person because of his mental illness, it referred to Dr. Kline's and Dr. Cuneo's opinions. It summarized Dr. Kline's opinion as follows:

7) Dr. Jeffrey S. Kline, PhD, Psychologist appointed by the court, opined that Mr. Grass has no history of any violence before or after the index crime; that Mr. Grass is not likely to be a danger to others and unlikely to have a mental illness or defect in the future; and that Mr. Grass is suitable for a conditional release.

This finding misstates Dr. Kline's written opinion and consistent testimony, which was that he "*cannot* find that Mr. Grass is unlikely to have a mental disease or defect rendering him a[sic] dangerous to the safety of himself or others within the reasonable future" (emphasis added). Dr. Kline did not give an opinion or testify that petitioner "is not now and is not likely in the reasonable future to commit another violent crime against another person because of such person's mental illness" as required by section 552.040.20(1), and the trial court did not find that he did. Dr. Kline's testimony did not support the trial

---

9. At our request, the parties have filed supplemental briefs addressing this issue.

court's conclusion that petitioner met the criteria set out in section 552.040.20(1).

In making its findings, the trial court specified it was relying on an opinion of its own expert, which that expert did not give. Given that 1) this was the court's expert, whom the court found to be "a very credible witness;" 2) his testimony did not support the court's finding; and 3) this left the court's finding supported by the expert opinion of only one of the three expert witnesses, we cannot say that the trial court would have made the same finding if it had been aware that its appointed expert had not so testified.

A court must exercise "extreme caution" in contemplating the conditional or unconditional release of a person acquitted of murder on the basis of mental defect or disease because " 'the risks are immense if an error is made.' " *Marsh*, 942 S.W.2d at 390 (quoting *State v. Dudley*, 903 S.W.2d 581, 587 (Mo.App.1995)). The section 552.040.20(1) finding on the likelihood a person would commit another violent crime in the reasonable future is an essential finding for conditional release in this case. The trial court's misstatement of Dr. Kline's opinion materially affects the merits of this case. It is error because the record does not support it. *Haden v. Riou*, 90 S.W.3d 538, 541 (Mo.App.2002).

■ Ordinarily, we would remand the case to the trial court for the entry of new findings that take into account Dr. Kline's actual opinion. *Haden*, 90 S.W.3d at 542; *see also State ex rel. Soc. & Rehab. Serv. v.*

*R.L.P.*, 157 S.W.3d 268, 277 (Mo.App. 2005); *Gross v. Helm*, 98 S.W.3d 85, 88 (Mo.App.2003). In this case, however, the judge who presided over the trial, heard the evidence, and observed the witnesses, is now deceased. Under these circumstances, we have no alternative but to reverse the judgment and remand for a new trial. *R.L.P.*, 157 S.W.3d at 277.[10]

II. *Compliance with Section 552.040.10(1)*

■ For its second point, the state contends that the judgment of the trial court granting petitioner's application for conditional release is void because it allows petitioner to be released in any county other than Warren County; however, petitioner did not serve copies of his application on the prosecutors of any other counties, and section 552.040.10(1) requires that a person seeking conditional release file a copy of his application on the prosecutor of the jurisdiction into which he is to be released. The state argues that such service is required to carry out the public safety purpose of the statute. We address this issue because, if the state is correct, it would require us to reverse the case, rather than reverse and remand.

As part of petitioner's proposed conditions of release attached to his amended application for conditional release, petitioner did not identify a county into which he would be released but stated that he would accept placement in a facility as recommended by the Supported Community Liv-

---

10. Because this judgment is being reversed and remanded for a new trial on these grounds, we have not considered the state's remaining claims regarding the sufficiency of the evidence on other findings. However, we make the following observation. In comparing the record and the fifteen pages of findings made on the application for conditional release, we have found a number of instances in which the findings inaccurately reflected

the record, were inconsistent with each other, or contained inconsistent reasoning. It also appeared that the trial court may have placed weight or relied on evidence that was irrelevant as support for a particular finding. We have not attempted to determine how these errors affected the result, because the judgment on remand will be based on new findings.

ing Program of the Department of Mental Health. Petitioner served his *pro se* application and his amended applications only on the prosecutor of Warren County. Because petitioner was committed to a mental health facility upon acquittal of murder in the first degree on the grounds of mental disease or defect, section 552.040.10(1) required that a copy of his application be served on the prosecutor of the jurisdiction in which he was tried and acquitted, Warren County, and also on the prosecutor of the jurisdiction into which he was to be released.

Section 552.040.10 specifies that the prosecutor of the acquitting jurisdiction should use his or her best efforts to notify the victims of dangerous felonies and "shall" represent the public safety interest. Section 552.040.10(2), (4). Section 552.040.10 does not further mention or give any duties or responsibilities to the prosecutor of the release jurisdiction.[11] Section 552.040.10(3) requires a petitioner to specify the conditions and duration of the proposed release, but it does not require a petitioner to identify a county for release in the application.

The parties have not directed us to any cases that have considered the requirement of service on the prosecutor of the release jurisdiction. When we construe statutes, our primary focus is to ascertain the intent of the legislature and give effect to that intent considering the words used in their plain and ordinary meaning. *State ex rel. Broadway–Washington v. Manners,* 186 S.W.3d 272, 275 (Mo. banc 2006). In this process, we examine the words used in the statute, the context in which they are used, and the problem the legislature sought to address with the statute. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998). We do not construe statutes in a way that produces unreasonable, oppressive, or absurd results. *Manners,* 186 S.W.3d at 275.

The statute requires service of the application for release on the prosecutor of the release jurisdiction, but it does not require a petitioner to identify a jurisdiction into which he or she is to be released. In this case, in which petitioner did not apply to be conditionally released in any particular jurisdiction but would accept placement in a facility to be recommended by a program of the Department of Mental Health, petitioner could not serve his application on the prosecutor of the jurisdiction into which he was to be released. Further, the statute addresses the problem that the legislature sought to resolve by requiring service on prosecutors, that the public safety interest be represented, because the statute requires that the prosecutor of the acquitting jurisdiction represent the public safety interest. It would be absurd, unreasonable, and contrary to legislative intent to require service of the application on the prosecutor of the release jurisdiction when that jurisdiction is unknown. The judgment was not void because service of the application for conditional release was not made on the prosecutor of the jurisdiction into which petitioner was to be released because that jurisdiction was not then known. Point two is denied.

### III. *Motion for Remand*

The state has filed a motion for remand for retrial because the record on appeal is

---

11. In contrast, the statute governing ninety-six hour trial releases, which requires that a thirty-day notice of release be given to the prosecutor of the release jurisdiction and that service of any application for hearing be made on the prosecutor of the release jurisdiction, allows the prosecutor of the release jurisdiction to object to the trial release, and, if any prosecutor objects, requires that the objecting prosecutor represent the public safety interest at the hearing. Section 552.040.15(1), (4).

incomplete in that the first thirty-six minutes of Dr. Gowdy's testimony was not transcribed at trial. Because this case is being remanded for retrial on other grounds, this motion is moot and therefore, denied.

*Conclusion*

That part of the judgment of the trial court denying unconditional release· is affirmed. That part of the judgment of the trial court granting conditional release is reversed and remanded for new trial.