**STATE of Missouri, Appellant,**

v.

**Lyman Leroy LARRINGTON, Respondent.**

No. WD 69606.

Missouri Court of Appeals, Western District.

April 14, 2009.

Ronald Q. Smith, for Appellant.

James C. Dowling, for Respondent.

Before Division Two: LISA WHITE HARDWICK, P.J., HAROLD L. LOWENSTEIN, Judge and VICTOR C. HOWARD, Judge.

VICTOR C. HOWARD, Judge.

The State of Missouri appeals the judgment of the trial court granting Lyman Larrington's petition for unconditional release under section 552.040, RSMo 2000.[1] The judgment of the trial court is reversed.

---

**1.** All statutory references are to RSMo 2000 unless otherwise indicated.

**2.** With conditional release, the committed person is subject to continuing supervision to impose conditions that will help ensure con-

**Facts**

Mr. Larrington is diagnosed with schizophrenic disorder, bipolar type. His condition is lifelong and requires medication to keep it in remission. When he has a manic episode, Mr. Larrington becomes animated, hyperactive, has racing thoughts, and is unable to sleep.

In June 1996, during a manic episode, Mr. Larrington left South Dakota where he lived to find a V.A. clinic in Florida where he previously had been treated. On June 29, 1996, he stopped for gas in Sedalia, Missouri. While pumping gas in his manic and paranoid state, Mr. Larrington felt he was in danger and drove away without paying for the gas. Police officers attempted to stop him, but he refused, and a high speed chase ensued at 80–miles–an-hour. Mr. Larrington was too paranoid and scared to stop, so the officers placed a strip on the highway to flatten his tires. As a result of the incident, Mr. Larrington was arrested and charged with two counts of second degree assault on a law enforcement officer and one count of resisting arrest for fleeing from and attempting to cause physical injury to two police officers by means of a dangerous instrument. On December 2, 1996, he was found not guilty by reason of mental disease or defect and committed to the custody of the Department of Mental Health for treatment.

Mr. Larrington was granted a conditional release[2] in 1999, and the Department placed him in a group home. In 2001, his conditional release was modified to allow for independent living. One of the conditions of Mr. Larrington's release was that he was to remain in Missouri. According

tinued mental stability, such as continued use of prescription medication or monitoring to ensure that illegal drug use is not occurring. *State v. Weekly*, 107 S.W.3d 340, 349 (Mo. App. W.D.2003).

to Mr. Larrington, he became somewhat manic and decompensated[3] in late 2004. He drove to Florida to find the V.A. clinic, as he had attempted to do in 1996 when he was previously arrested. He stopped taking his medications in Florida. After talking to his case monitor, he agreed that she would come to Florida and escort him back to Missouri. He was returned to Fulton State Hospital for about seven months.

Seven months later in June 2005, Mr. Larrington was again allowed to live independently on conditional release. His conditional release was revoked in April 2006 when he experienced another manic episode and stopped taking his medication. During the episode, he tore down the blinds on at least one window in his bedroom and threatened to cut out his wife's eyes. When his wife was unable to reason with him, she called his social worker who then called the police. As a result of the incident, Mr. Larrington was returned to Fulton State Hospital.

Mr. Larrington applied for an unconditional release[4] on February 5, 2007. At the hearing, Mr. Larrington testified that he was seeking an unconditional release rather than a conditional release because he wanted to move back to South Dakota to be with his wife. He stated that it is important for him to take his medications and that he can conform his conduct to the requirements of the law.

Nancy Larrington, Mr. Larrington's wife, also testified at the hearing. She testified that she is a nurse's aide experienced in dispensing medicine and that she is aware of her husband's condition. She further stated that she would be willing to act as a "watchdog" regarding her husband's condition.

Finally, Dr. Armando Ponce, Mr. Larrington's treating psychiatrist, testified. He explained that Mr. Larrington currently has a mental disease or defect but that it is in remission while he is medicated. Dr. Ponce testified that that he cannot predict whether Mr. Larrington will take his medications but that if he doesn't, he will decompensate psychologically and present a danger to himself and/or others. Dr. Ponce testified that three factors will help make it more likely that Mr. Larrington will take medications—(1) he seems to have insight into his mental illness and seems to be genuinely concerned that if he doesn't take his medications, he will become sick, (2) he likes the medications that he is taking, and (3) he will be living with his wife. Regardless, Dr. Ponce also stated that based on Mr. Larrington's history of medication non-compliance while living in the community on conditional release, he is concerned that Mr. Larrington would not take his medications. Dr. Ponce believes that at the current time, Mr. Larrington needs structure and supervision to ensure that he takes his medications.

After the hearing, the trial court entered its judgment granting Mr. Larrington an unconditional release. The trial court found, in pertinent part:

> [Mr. Larrington] has been diagnosed as a bi-polar manic depressive and is medicated for the condition. So long as he is on his prescribed medications he has successfully caused his condition to be in remission.
>
> Since his commitment, the Department of Mental Health has subsequently

---

3. "Decompensation" is defined as "(in psychology) the failure of a defense mechanism." Mosby's Medical Dictionary 518 (7th ed.2006).

4. "Unconditional release involves a total loss of the [State's] jurisdiction. After being unconditionally released, the [committed person] is no longer under the supervision of the [State]." *Weekly*, 107 S.W.3d at 349.

allowed [Mr. Larrington] to be conditionally released for a period of seven years. The evidence indicates that he has been medication noncompliant only once since the commitment and that was in 2006. At that time, his conditional release was revoked.

Mr. Larrington has insight into his disease and shows a willingness to take his medications. He has support in this from a wife who has some experience and training in dealing with the disease and will insure his compliant use. While Mr. Larrington will always have the condition, so long as he is medically compliant he will be no danger to himself or others. His long running conditional release with only one manic episode clearly convinces this court that he is similar to many others in our society with the similar disease and is not a serious risk to offend.

This appeal by the State followed.

### Standard of Review

A judgment granting an unconditional release will be affirmed on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *State v. Revels*, 13 S.W.3d 293, 297 (Mo. banc 2000)(citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). " 'Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree of judgment is wrong.' " *Id.* (quoting *Murphy*, 536 S.W.2d at 32).

### Points on Appeal

The State of Missouri raises three points on appeal asserting that the trial court erred in granting Mr. Larrington an unconditional release. In its first point, it claims that the trial court failed to make findings required under section 552.040.9. In its second point, the State argues that the trial court's factual findings were plainly inconsistent with the uncontroverted evidence presented at trial. And in its last point, the State contends that Mr. Larrington failed to prove by clear and convincing evidence that that he does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others. Points two and three will be addressed together and are dispositive. Point one need not be addressed.

### Discussion

 "A plea of not guilty by reason of mental disease or defect supports an inference of continuing mental illness." *State v. Weekly*, 107 S.W.3d 340, 346 (Mo.App. W.D.2003)(citing *Jones v. United States*, 463 U.S. 354, 366, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)). Thus, the Constitution permits the confinement of a person who has been found not guilty by reason of mental disease or defect in a mental institution " 'until such time as he has regained his sanity or is no longer a danger to himself or society.' " *Id.* (quoting *Jones*, 463 U.S. at 370, 103 S.Ct. 3043). In Missouri, the statutory standard for unconditional release is found in section 552.040.9, which provides:

> No committed person shall be unconditionally released unless it is determined through the procedures in this section that the person does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others.

This subsection requires specific findings when granting an unconditional release. *Revels*, 13 S.W.3d at 295.

■ The procedure for a hearing on an application for unconditional release is governed by section 552.040.7. It requires the trial court to consider the following factors in addition to any other relevant evidence in determining if the committed person should be unconditionally released:

(1) Whether or not the committed person presently has a mental disease or defect;

(2) The nature of the offense for which the committed person was committed;

(3) The committed person's behavior while confined in a mental health facility;

(4) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(5) Whether the person has had conditional releases without incident; and

(6) Whether the determination that the committed person is not dangerous to himself or others is dependent on the person's taking drugs, medicine or narcotics....

§ 552.040.7. The burden of persuasion is on the party seeking unconditional release to prove by clear and convincing evidence that the committed person does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others. § 552.040.7(6); *Weekly*, 107 S.W.3d at 346. "Clear and convincing evidence is evidence that instantly tilts the scales in the affirmative when weighed against the opposing evidence and that leaves the fact finder with the abiding conviction that the evidence is true." *Grass v. State*, 220 S.W.3d 335, 339 (Mo. App. E.D.2007).

Mr. Larrington failed to present clear and convincing evidence that in the reasonable future he is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others. The evidence was undisputed that Mr. Larrington was originally committed to the Department of Mental Health after leading police officers in a high-speed chase during a manic and paranoid episode. He was charged with two counts of second degree assault for attempting to cause physical injury to two police officers by means of a dangerous instrument. The evidence was also undisputed that Mr. Larrington is diagnosed with schizophrenic disorder, bipolar type but that his condition is in remission while he is medicated. Dr. Ponce, Mr. Larrington's treating psychiatrist, testified that if Mr. Larrington does not take his medication, he will decompensate psychologically and present a danger to himself and/or others. The primary issue at trial was whether Mr. Larrington will take his medications if unconditionally released.

In granting Mr. Larrington an unconditional release, the trial court relied heavily on its finding that Mr. Larrington has been medication noncompliant only one time in 2006 during his seven-year conditional release. This finding, however, was against the weight of the evidence. The uncontroverted evidence revealed that Mr. Larrington was on conditional release in 2004 when, as a result of an episode, he violated the conditions of his release and drove to Florida looking for a V.A. clinic on a trip very similar to the one he attempted in 1996 when he was originally arrested and committed. While in Florida, Mr. Larrington stopped taking his medications. Mr. Larrington was returned to Fulton State Hospital for seven months. Then, in April 2006, less than one year after again being allowed to live independently on conditional release, Mr. Larrington had another manic episode and stopped taking his medications. During this episode, he threatened to cut out his

wife's eyes and tore down the blinds in his bedroom. When she was unable to reason with him, Mrs. Larrington called his social worker concerned that he would get hurt or arrested in his manic state. The social worker then called the police. This latest episode occurred only ten months before Mr. Larrington filed his petition for unconditional release and twenty-three months before the hearing on the petition.

■■■ "The purpose of a conditional release, as opposed to an unconditional release, is to give an opportunity to an insanity acquittee to demonstrate, under the conditions of the release, that he or she will not present a danger to self or others when reintegrated into the community." *Weekly*, 107 S.W.3d at 342. "Successful completion of conditional releases then becomes substantive evidence of a committed person's suitability for unconditional release." *Id.* at 350. On the other hand, "[i]t is appropriate, under section 552.040, to deny unconditional release to a patient that has shown the inability to provide for his or her own mental health without supervision when there is a likelihood that the patient will become psychotic and dangerous." *Id. See also Grass*, 220 S.W.3d at 342–43.

While on conditional release, Mr. Larrington twice stopped taking the medications required to keep his mental disease or defect in remission resulting in his return to Fulton State Hospital. Mr. Larrington has recently shown an inability to provide for his own mental health while on conditional release. Dr. Ponce testified that he could not predict whether Mr. Larrington would take his medications if unconditionally released. He stated that while some factors existed making it more likely that Mr. Larrington would, he was concerned that Mr. Larrington would not take his medications based on his history of medication non-compliance while living in the community on conditional release. Dr. Ponce further testified that he believes that at the current time, Mr. Larrington needs structure and supervision to ensure that he takes his medications. In light of this evidence, Mr. Larrington's desire and intent to continue taking his medications and his wife's desire and intent to support him in doing so did not provide clear and convincing evidence that Mr. Larrington is not likely to be dangerous in the reasonable future. Mr. Larrington failed to satisfy his burden for unconditional release.[5] The judgment granting Mr. Larrington an unconditional release is, therefore, reversed.

All concur.

---

5. *See Grass*, 220 S.W.3d at 342 (where psychologist testified that mental health patient who was committed after murdering his wife had not demonstrated the ability to monitor his own behavior and all experts recommended against unconditional release, substantial evidence supported trial court's judgment denying unconditional release); *Weekly*, 107 S.W.3d at 341–42, 345, 351 (where mental health patient, who was committed after commandeering a vehicle and forcing an individual at gunpoint to drive him various places, took amphetamines and other drugs during previous conditional releases and treating psychiatrist testified that he believed patient, if unconditionally released, would use drugs again, which would pose a risk of psychotic symptoms in him, patient failed to meet his burden of showing he was not likely to be dangerous in the reasonable future and trial court's judgment granting unconditional release was reversed).