**STATE of Missouri, Appellant,**

v.

**Anthony GRATTS, Respondent.**

**No. WD 60794.**

Missouri Court of Appeals, Western District.

April 29, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 2003.

Application for Transfer Denied Aug. 26, 2003.

Jeremiah W. (Jay) Nixon, Attorney General, Greg A. Perry, Assistant Attorney General, Jefferson City, MO, for appellant.

Leon Munday, Assistant Public Defender, Kansas City, MO, for respondent.

Before ELLIS, C.J., and ULRICH and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

The Department of Mental Health (the Department), by and through the State of Missouri, appeals from the circuit court's judgment granting Anthony Gratts an unconditional release pursuant to section 552.040 RSMo 2000.[1] The Department brings two points on appeal, each alleging that Gratts did not prove by clear and convincing evidence the statutory mandates for receiving an unconditional release.

As explained below, because the circuit court misapplied the law, we reverse the judgment and remand for the circuit court's consideration of the facts under the proper statutory mandates for unconditional release in section 552.040.

**Background**

On March 26, 1994, Gratts shot his wife to death while she was holding their infant child in their Kansas City, Missouri, home. Gratts believed at the time of the shooting that his wife was a witch with supernatural powers and that she was going to kill him by throwing the baby at him. Gratts also heard a voice in his head telling him to "go ahead and shoot her." Gratts said that after firing the shot he thought he was Jesus Christ, which is the name he gave the police during booking procedures when he was later detained. Immediately after the shooting, Gratts drove to the Kansas City Police Department headquarters, told police he had killed his wife, gave his address and left. Gratts then drove to Oak Grove, Missouri, which at the time he believed to be heaven, where he thought he might find his dead wife. When he returned to the house, the police were there to arrest him.

During these events, Gratts was in the midst of a psychotic episode induced by his ingestion of large quantities of phencyclidine (PCP) over a long period of time prior to the shooting. In the six months before the shooting, Gratts had smoked 20 to 30 PCP-laced cigarettes per day, and the evening before the shooting he smoked three to four PCP-laced cigarettes.

The State charged Gratts with murder in the second degree and armed criminal action. Two mental health professionals testified that Gratts had no prior history of psychiatric problems and was competent for trial, but they agreed that at the time of the shooting Gratts suffered from Phencyclidine (PCP)-Induced Psychotic Disorder,[2] a mental disease or defect that rendered him incapable of knowing or appreciating the nature, quality, or wrongfulness of his conduct. Both mental health specialists also diagnosed Gratts with PCP dependence. Accordingly, on April 7, 1995, the circuit court accepted Gratts' "not guilty by reason of mental disease or

1. Unless otherwise noted, statutory references are to the Revised Statutes of Missouri (2000).

2. The psychiatrists testified that PCP–Induced Psychotic Disorder is marked by the following symptoms that occur after the taking of PCP: auditory and visual hallucinations, delusions of persecution, erratic behavior, impaired judgment and disorganized thought processes.

defect excluding responsibility" plea, section 552.030 RSMo 1994, so, pursuant to section 552.040.2 RSMo 1994, the court committed him to the custody of the Missouri Department of Mental Health. He was later placed in the less-restrictive Northwest Missouri Psychiatric Rehabilitation Center (Northwest) in St. Joseph, Missouri.

■ Almost five years later, in December of 1999, after a recommendation from Northwest's staff, Gratts was granted a conditional release.[3] During that release, he voluntarily admitted himself to Northwest for twenty-one days while officials investigated the allegation that he had broken the terms of his conditional release. The allegations were unfounded, so he was returned to the community on conditional release.

Apparently, Gratts successfully completed his first conditional release. A year later, the court granted Gratts a second, uncontested conditional release, the terms of which he began to violate shortly thereafter. For example, in the same month as his second release, Gratts left his apartment for the weekend saying he was going to stay with his mother, who later reported she had not seen him. Gratts also failed to sign information release forms, stayed overnight outside of his apartment without approval, left the State of Missouri without approval, and failed to follow the Department's rules and regulations governing conditional release as well as the rules of his apartment complex, which was a facili-

ty operated by the Department with monitoring, structure, and supervision.

Consequently, the Department provisionally revoked Gratts' conditional release on May 3, 2001. A month later, pursuant to section 552.040.17, after an administrative revocation hearing was conducted, the Department found Gratts had violated several conditions of his release and formally revoked his release.

The following month, Gratts filed his application for unconditional release in the Circuit Court of Jackson County, Missouri.[4] The Department and the State objected and requested a hearing.

The circuit court conducted a hearing on Gratts' Application for Unconditional release on November 15, 2001, prior to which Gratts' counsel requested findings of fact under Rule 73.01(c). Gratts presented the testimony of two of his psychiatrists, Dr. James Reynolds and Dr. Stephen Peterson.

Dr. Reynolds testified that, at the time of the hearing, he was "able to say with a reasonable degree of medical certainty that Mr. Gratts does not have a mental disease or defect rendering him dangerous to the safety of himself or others." Dr. Reynolds classified Gratts' condition as PCP–Induced Psychosis, Recovered, which, he explained, meant that he did not consider it likely that the psychosis would recur. Dr. Reynolds testified that absent any future use of PCP by Gratts no psychotic or major psychiatric symptoms would be expected to appear. However,

---

**3.** As explained by this court in *State v. Weekly,* 107 S.W.3d 340 (Mo.App. W.D. 2003), "[t]he purpose of a conditional release, as opposed to an unconditional release, is to give an opportunity to an insanity acquittee to demonstrate, under the conditions of the release, that he or she will not present a danger to self or others when reintegrated into the community. The return to the community is accom-

plished under conditions in order to test the thesis that the acquittee may be safely returned to society."

**4.** Section 552.040.5 allows that "[t]he committed person ... may file an application in the court that committed the person seeking an order releasing the committed person unconditionally."

Dr. Reynolds did not support Gratts' unconditional release because of several concerns about Gratts' behavior during periods of conditional release. One of his main concerns was Gratts' use of what Dr. Reynolds termed "appalling judgment." He explained that this lack of judgment was evident in the short shrift Gratts seemingly afforded the conditions of his release. Dr. Reynolds also refused to predict with any certainty the likelihood that Gratts would be able to abstain from PCP use in the future. Because of the intimate link between Gratts' psychosis and his use of PCP, Dr. Reynolds refused to predict whether or not in the reasonable future Gratts was likely to suffer from a mental disease or defect rendering him dangerous to himself or others. Thus, he concluded that he could not "affirmatively endorse the statutory criteria for an unconditional release."

Gratts' second witness, Dr. Peterson, agreed with Dr. Reynolds that Gratts no longer suffered from a mental disease or defect in that the PCP–Induced Psychosis did not endure. However, Dr. Peterson's medical opinion diverged from Dr. Reynolds' in that he felt comfortable making a prediction about Gratts' future prospects. Dr. Peterson testified that Gratts is not in the reasonable future likely to use PCP. He further testified that it was also unlikely that Gratts would use PCP in the large quantities necessary to trigger the psychosis that would make Gratts a danger. Thus, Dr. Peterson's testimony indicates that Gratts is not, in the reasonable future, likely to have a mental disease or defect rendering him dangerous to the safety of himself or others.

After Gratts presented this testimony, the circuit court held that because Gratts no longer suffered from a mental disease or defect, precedent required that he be released unconditionally. The Department applied for a permanent stay of the unconditional release, which the circuit court denied. This appeal follows.

## Standard of Review

■ Because the judgment granting Gratts' unconditional release is the product of a judge-tried case, we must sustain the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *see Greeno v. State*, 59 S.W.3d 500, 504 n. 4 (Mo. banc 2001) (discussing application of the *Murphy v. Carron* standard of review to cases involving the clear and convincing standard of proof).

## § 552.040—Unconditional Release

Section 552.040.5 provides the procedure by which a committed person or the head of the facility where the person is committed may apply for an unconditional release and the subsequent due process afforded the committed person. If the hearing is not waived under section 552.040.6, section 552.040.7 governs the hearing procedure on the application; it provides:

At a hearing to determine if the committed person should be unconditionally released, the court shall consider the following factors in addition to any other relevant evidence:

(1) Whether or not the committed person presently has a mental disease or defect;

(2) The nature of the offense for which the committed person was committed;

(3) The committed person's behavior while confined in a mental health facility;

(4) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(5) Whether the person has had conditional releases without incident; and

(6) Whether the determination that the committed person is not dangerous to himself or others is dependent on the person's taking drugs, medicine or narcotics.

The burden of persuasion for any person committed to a mental health facility under the provisions of this section upon acquittal on the grounds of mental disease or defect excluding responsibility shall be on the party seeking unconditional release to prove by clear and convincing evidence that the person for whom unconditional release is sought does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others.

Section 552.040.9 further dictates that "[n]o committed person shall be unconditionally released unless it is determined through the procedures in this section that the person does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others."

Because Gratts was committed upon acquittal on the grounds of mental disease or defect excluding responsibility for murder in the second degree, which is a "dangerous felony" as defined in section 556.061, section 552.040.20 further provides that he:

shall not be eligible for conditional or unconditional release under the provisions of this section unless, in addition to the requirements of this section, the

court finds that the following criteria are met:

(1) [Gratts] is not now and is not likely in the reasonable future to commit another violent crime against another person because of [his] mental illness; and

(2) [He] is aware of the nature of the violent crime committed against [his wife] and presently possesses the capacity to appreciate the criminality of the violent crime against [his wife] and the capacity to conform [his] conduct to the requirements of law in the future.

In both of its points on appeal, the Department maintains that the circuit court erred in failing to follow these statutory mandates for unconditional release. First, the Department alleges that the circuit court erred in granting the unconditional release, because Gratts failed to prove by clear and convincing evidence that he is not in the reasonable future likely to have a mental disease or defect that renders him a danger to himself or others. Second, the Department alleges that the circuit court erred in granting the unconditional release because Gratts did not provide clear and convincing evidence that he has met all of the statutory elements of sections 552.040.7 and .20 as set forth above.

### Circuit Court's Judgment

In its "Amended Findings of Fact, Memorandum Opinion and Judgment," after detailing the factual background of Gratts' commitment, the circuit court found, among other things, that the revocation of Gratts' conditional release resulted from "technical violations of the conditions of his release." It further found:

11. As confirmed by *all* treating and evaluating psychiatrists, it is uncontest-

ed that, since being taken into custody in March, 1994, Mr. Gratts:

a. has displayed no overt signs of suffering from a mental disease or defect;

b. has experienced no significant depression or anxiety disorders;

c. has never tested positive for drugs or alcohol;

d. has never displayed signs of drug-seeking behavior;

e. has never engaged in violent or illegal behavior;

f. has not suffered from delusions, hallucinations or cognitive disorders;

g. has demonstrated average intelligence;

h. has demonstrated appropriate insight into his mental and legal problems;

i. has suffered no apparent residual effects of PCP use; and

j. has demonstrated a commitment to sobriety.

12. The undisputed current Axis I diagnosis of Mr. Gratts has been changed to PCP Induced Psychotic Disorder with Hallucinations, **Recovered** (emphasis supplied) and PCP Dependence in Remission in Controlled Environment.

13. As confirmed by *all* treating and evaluating physicians, it is undisputed and necessarily conceded by the State of Missouri and Department of Mental Health that Mr. Gratts does not presently suffer from a mental disease or defect recognized by Chapter 552 RSMo.

Following these findings of fact, the circuit court set forth its holding in its "Memorandum Opinion"; the court held:

1. It is a violation of the Fourteenth Amendment to the United States Constitution to confine an insanity acquittee unless he is both mentally ill and dangerous. *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).

2. As recently recognized by the Western District of the Missouri Court of Appeals in *State v. Nash,* 972 S.W.2d 479, 482–83 (Mo.App. W.D.1998):

> The Missouri Supreme Court acknowledged the *Foucha* opinion and further determined that the burden placed upon insanity acquittees to prove that they no longer suffer from a mental disease or defect rendering them dangerous to themselves or others under Section 552.040 does not violate the constitution. *State v. Tooley,* 875 S.W.2d 110, 113–14 (Mo.1994). Likewise, if it is determined that acquittee is not suffering from a mental disease or defect, then he or she may no longer be confined.... Once the trial court concluded that the Appellant does not have a mental disease or defect, the trial court should have then ordered the unconditional release of the defendant.

3. As recently as last week, the Supreme Court of Missouri reiterated the principals of *Foucha* and *Nash* in *Greeno v. State of Missouri,* [59 S.W.3d at 500]:

> A state may only confine someone found not guilty by reason of insanity if the confined person is **both** suffering from a mental disease or disorder and **might** be dangerous to himself or others if released. ([E]mphasis supplied[.])

4. As the clear, convincing and undisputed evidence is that Mr. Gratts does not presently suffer from a mental dis-

ease or defect, this court is bound to unconditionally release Mr. Gratts.

(Footnote omitted.)

## Discussion

In *Greeno*, the Missouri Supreme Court does make the bare statement in quoting *Foucha* that an acquittee cannot be confined unless he is *"both* suffering from a mental disease or disorder *and* might be dangerous to himself or others if released." 59 S.W.3d at 503 (emphasis added). Thus, upon first reading of United States Supreme Court and Missouri Supreme Court precedents, we can understand the circuit court's conclusion that the concession by all parties that Gratts was no longer mentally ill mandated his unconditional release. However, read in context, the above statement in *Greeno* appears to be a mere citation of *Foucha* rather than an analysis of the elements to be considered in regard to unconditional releases. We have also considered our supreme court's statement in *State v. Revels*, 13 S.W.3d 293, 296 (Mo. banc 2000), that Missouri's "statutory standard meets the holding of *Foucha*." We are bound by this "stamp of approval," and Missouri's statute governing unconditional release, section 552.040, definitely requires a determination regarding a person's likelihood to suffer from a mental disease or defect in the reasonable future rendering him dangerous to the safety of himself or others.

Further explanation is provided in our recent opinion in *State v. Weekly*, 107 S.W.3d 340 (Mo.App. W.D. 2003). In *Weekly*, the circuit court, relying upon the holdings of *Foucha* and *Nash*, granted Weekly an unconditional release solely on the grounds that he no longer suffered from a mental illness or defect. *Id.* at 107 S.W.3d at 344. Although Weekly had requested specific findings under Rule 73.01

as Gratts did, in granting Weekly an unconditional release, the circuit court did not make the findings required for granting an unconditional release under section 552.040. *Id.* Specifically, the circuit court did not find, as required by section 552.040.9, that in the reasonable future Weekly is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others. *Id.* Nor did the court make any findings in accordance with section 552.040.7. *Id.* Thus, this court considered whether, in light of the holdings in *Foucha* and *Nash*, the court must grant an unconditional release when an acquittee has shown that he is not currently exhibiting signs of a mental disease or defect rendering him dangerous to himself or others, but has not shown that in the reasonable future he is not likely to suffer from such a condition. *Id.*

After distinguishing *Nash* and *Foucha*, which analysis is likewise applicable to Gratts' case, this court extensively considered other cases construing section 552.040 in light of *Foucha* and expounded on the distinguishing characteristics of conditional release versus unconditional release. *Id.* at 107 S.W.3d at 345 – 347. We recognized that in *Revels*, 13 S.W.3d at 296, the Missouri Supreme Court has held that the statutory standard for unconditional release meets the holding in *Foucha*, and this court is bound by that holding. *Id.* at 107 S.W.3d at 345. Thus, because "[section 552.040.9] does not contravene the holding in *Foucha*," we held that the circuit court misapplied the law when it "failed to properly apply the statutory factors in section 552.040." *Id.* We explained that "under the statutory test, the court was required to deny the unconditional release because Weekly failed to meet his burden of showing that he was not likely to be dangerous in the reasonable future." *Id.* at 107

S.W.3d at 351. Accordingly, we reversed the judgment granting Weekly an unconditional release. *Id.*

■ So, too, must we reverse the circuit court's judgment granting Gratts' unconditional release because the circuit court failed to make the statutorily mandated findings under section 552.040 and, therefore, misapplied the law. However, because, as explained below, the facts of Gratts' case are distinguishable from Weekly, rather than just reverse the circuit court's judgment as we did in *Weekly*, we reverse and remand Gratts' case to the circuit court to allow for its consideration of the facts in light of the proper statutory mandates in section 552.040.

Unlike Weekly, who failed miserably in meeting his burden of showing that he was not in the reasonable future likely to have a mental disease or defect rendering him dangerous to the safety of himself or others, *see id.* at 107 S.W.3d at 341 – 343, Gratts presented evidence from at least one psychiatrist, Dr. Peterson, that he is not likely to relapse and use PCP again, and there was evidence that Gratts is not in the reasonable future likely to have a mental disease or defect rendering him dangerous to the safety of himself or others. With regard to the factors in section 552.040.7 to be considered before granting unconditional release, as the circuit court details in its findings of fact, Gratts demonstrated during his conditional releases that he no longer used PCP, the drug that produced his psychotic state. His "technical" violations of his second conditional

release that led to its revocation do not appear to have been associated with the recurring use of drugs or other dangerous propensities as Weekly's violations were. Also, his psychotic disorder diagnosis was "recovered" versus "in remission" like Weekly.[5]

It is apparent from the judgment that the circuit court never considered this evidence in light of the remaining statutory mandates for granting unconditional release because, understandably, it felt confined by *Foucha, Nash,* and *Greeno* to grant the release after the evidence clearly showed Gratts no longer suffered from a mental illness. Although Dr. Reynolds refused to offer an opinion about whether Gratts is in the reasonable future likely to have a mental disease or defect that renders him a danger to himself or others, Dr. Peterson's testimony, if believed, supports a finding that he is not likely to. The Department urges us to find that this conflicting evidence does not satisfy the "clear and convincing" burden placed upon Gratts in section 552.040.7 and requests that we reverse the judgment. But, on the facts of this case, whether the evidence is "clear and convincing" relies in large part upon credibility issues, which we leave to the circuit court, which had an opportunity to observe the witnesses in light of the surrounding circumstances. The clear and convincing standard of proof may be met even though the court has contrary evidence before it. *See In the Interest of C.K.G.*, 827 S.W.2d 760, 765 (Mo.App. S.D. 1992) (applying the "clear, cogent and convincing" evidence standard in a parental

---

**5.** Dr. Reynolds testified at Gratts' hearing that under the DSM–IV, *see Weekly,* 107 S.W.3d at 342 n. 1, "in remission [ ] you're not showing active symptoms of the disorder, but there's an expectation or at least an inference that that disorder could recur at some point or somehow leave remission, just as if a cancer diagnosis being considered in remission versus recovered, there's at least an implication that the cancer could recur, as opposed to the person who's considered recovered, you don't expect it to recur."

rights termination proceeding and explaining that, "[t]his standard of proof may be met although the court has contrary evidence before it. As the trier of fact, the circuit court has leave to believe or disbelieve all, part or none of the testimony of any witness.").

Because the court did not determine whether the evidence was clear and convincing in support of Gratts' unconditional release under all the statutory elements or factors in sections 552.040.7, 552.040.9, and 552.040.20 and there is evidence, if believed, in support thereof, we remand to the circuit court for its consideration of the evidence under the proper statutory standard.

### Conclusion

In granting Gratts unconditional release solely on the grounds that he no longer suffered from a mental illness, the circuit court misapplied the law, requiring us to reverse the judgment and remand the case to the circuit court to determine whether Gratts met his burden of establishing by clear and convincing evidence his entitlement to unconditional release according to all of the statutory mandates in section 552.040.

ELLIS, C.J., and ULRICH, J., concur.