**STATE of Missouri, Respondent,**

v.

**Mark ROTTINGHAUS, Appellant.**

**No. WD 71910.**

Missouri Court of Appeals,
Western District.

May 25, 2010.

James L. McMullin, Kansas City, MO, for Appellant.

Yamini Laks, Jefferson City, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., JAMES E. WELSH, and GARY D. WITT, JJ.

JAMES EDWARD WELSH, Judge.

Mark Rottinghaus appeals the circuit court's judgment denying his application for unconditional release under section 552.040, RSMo 2000. Rottinghaus asserts that the State failed to prove by clear and convincing evidence that he is presently suffering from a mental disease or defect that makes him presently dangerous to himself and others, that he is presently unable to conform his conduct to the requirements of the law, and that, in the foreseeable future, he is likely to have a mental disease or defect and be unable to conform his conduct to the requirements of the law. We affirm.

On November 18, 1997, while experiencing a manic episode due to bipolar disorder, Rottinghaus began breaking and throwing furniture out of his home. Rottinghaus then broke into multiple homes around his residence in Jackson County, breaking and throwing furniture. After entering one home, Rottinghaus engaged in an argument with a female in that home. Rottinghaus grabbed the woman, stabbed her in her midsection, and then began hitting her in the head with dishes. Two male neighbors responded to the woman's screams. Rottinghaus stabbed and killed one of the men who came to the woman's

aid. Thereafter, Rottinghaus was arrested by the Kansas City Police Department.

On February 25, 1998, Rottinghaus was ordered into the custody of the Department of Mental Health for evaluation for fitness to proceed and responsibility for his crime. The initial mental evaluation revealed that, when the offenses occurred, Rottinghaus was suffering from "mental disease or defect, specifically Bipolar I Disorder, Manic Episode, With Psychotic Features[.]" The evaluation concluded that Rottinghaus suffers from a mental disease or defect, "specifically Bipolar I Disorder, Most Recent Episode Manic, In Partial Remission, and Adjustment Disorder With Depressed Mood." The examiners believed that, at the time of the alleged criminal conduct, Rottinghaus "did not know or appreciate the nature, quality, or wrongfulness of his conduct and was suffering from a mental disease or defect by which he was incapable of conforming his conduct to the requirements of the law." A second mental evaluation found that Rottinghaus has suffered from bipolar disorder since 1996 and that, at the time of the alleged criminal conduct, Rottinghaus was incapable of appreciating the wrongfulness of his conduct as a result of the bipolar disorder.

On January 27, 1999, the circuit court found Rottinghaus not guilty of second degree murder, two counts of assault in the second degree, and three counts of armed criminal action by reason of mental disease or defect. The court concluded that, at the time of the criminal conduct, Rottinghaus "did not know or appreciate the nature, quality, or wrongfulness of his conduct and was incapable of conforming his conduct to the requirements of the law, and was suffering from a mental disease or defect excluding responsibility for such conduct[.]" The circuit court committed Rottinghaus to the Department of Mental Health for custody, care, and treatment in a secure State mental hospital.

Rottinghaus received treatment for bipolar disorder as early as August 1996 through the Veteran's Administration Medical Center ("VA"). The physician at the VA treated Rottinghaus with Lithium. In 1996, with his doctor's consent, Rottinghaus stopped taking Lithium for a two-month period. After two months, Rottinghaus returned to the VA "exhibiting labile affect and some disorganization in his thinking process." Rottinghaus was then put back on Lithium. Rottinghaus's medical records indicate that in April 1997, he displayed mild affective instability and crying spells for little reason. In late 1997, without his physician's knowledge, Rottinghaus stopped taking Lithium. It was during this period that Rottinghaus committed the stabbings and murder that resulted in his commitment to the Department of Mental Health.

Rottinghaus currently resides at Guhleman Forensic Center, an intermediate security facility. On February 10, 2009, Rottinghaus filed a first amended application for unconditional release with the circuit court.

At the hearing on Rottinghaus's application for unconditional release, Dr. Kavita Pendurthi, M.D., a psychiatrist employed by the Department, testified regarding Rottinghaus's mental disease. Pendurthi has been treating Rottinghaus since 2005. Pendurthi testified that Rottinghaus's current psychiatric diagnosis is "bipolar disorder NOS [(not otherwise specified);] alcohol abuse in remission while in a controlled environment; [and] personality disorder NOS [ (not otherwise specified) ] with narcissistic and borderline traits[.]" According to Pendurthi, Rottinghaus's bipolar disorder is not in remission. Pendurthi prescribed Depakote for Rottinghaus's bipolar symptoms, but Rottinghaus refuses

to take the medicine. According to Pendurthi, Rottinghaus began refusing his Depakote in 2007, and, since that time, his symptoms of bipolar disorder have increased. These symptoms include increased paranoia, irritability, agitation, anger, aggression, impulsivity, crying spells, and some periods of grandiosity. Pendurthi testified to a reasonable degree of psychiatric certainty that Rottinghaus has a mental disease that renders him dangerous to himself and others. Pendurthi said that she cannot state that in the reasonable future Rottinghaus is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others. Pendurthi also testified that Rottinghaus is not able to conform his conduct to the requirements of the law.

Charlene Coe–Gilmore is a licensed psychologist, supervisor, and program coordinator at Fulton State Hospital. She has worked at Fulton State Hospital for twenty five years and became Rottinghaus's case manager and therapist in 2007. Coe–Gilmore testified that Rottinghaus displays behaviors of exaggerated irritability, impulsivity, chronic sleep disturbances, depression, tearfulness, and aggression. Coe–Gilmore stated that Rottinghaus antagonizes others to the point that staff intervention is sometimes needed to prevent someone from getting hurt. According to Coe–Gilmore, Rottinghaus denies that he has a mental illness and refuses to take medication. Coe–Gilmore said that Rottinghaus has a mental illness and that he is dangerous to himself and others. She said that her opinions regarding Rottinghaus's dangerousness is due to his mental illness and not merely because of personality issues. She also said that she has concerns that Rottinghaus would not choose to conform his conduct to the requirements of the law.

Department Incident Reports document some of Rottinghaus's aggressive behavior. In 2003, Rottinghaus punched a peer and cursed, hit, and kicked staff. In 2005, Rottinghaus pulled his roommate's hair. In 2006, Rottinghaus engaged in a verbal argument with a peer that then required additional staff for safety. In 2006, Rottinghaus pushed a staff member who intervened in a verbal altercation which Rottinghaus had with another peer. Also, in 2006, Rottinghaus rushed a peer with his arms raised, and support staff had to separate the two clients. Moreover, Rottinghaus's Treatment Plan Review noted that, in September 2008, Rottinghaus became disruptive and was yelling at a peer and would not stop until staff stepped between Rottinghaus and the peer. Further, Pendurthi testified that, in February, Rottinghaus got mad at his roommate and punched his roommate in the leg and scratched his neck.

Pendurthi said that Rottinghaus has continuous conflicts with his roommates and staff and that he overreacts to minor interaction or incidents. Both Pendurthi and Coe–Gilmore said that Rottinghaus is accusatory, loud, argumentative, verbally aggressive, hypersensitive, and believes people are against him.

According to Pendurthi, she would not recommend that Rottinghaus be placed in a minimum security facility let alone recommend unconditional release. She also said that at the current intermediate security facility she does not even recommend Rottinghaus for unescorted "grounds passes" because Rottinghaus is not dependable and trustworthy. Pendurthi said that, even in the ward with staff watching him, Rottinghaus is able to get to other patients and injure them.

Dr. A.E. Daniel testified on behalf of Rottinghaus. Daniel had seven visits with Rottinghaus between 2001 and 2008. Dan-

iel found that Rottinghaus has a current diagnosis of "Bipolar Affective Disorder I, most recent episode, Manic (1997) in Full Remission;" "Alcohol Abuse, in Remission, Under Controlled Environment (Per Fulton State Hospital Records);" and "Mixed Personality Traits—Antisocial and Borderline Type." Daniel's report states that Rottinghaus has never been physically aggressive to fellow patients or staff and that he has never placed anyone in physical danger. Daniel believes Rottinghaus's last manic episode was in 1997 and thus opined that Rottinghaus's bipolar disorder is currently in remission. Daniel testified that, because Rottinghaus's mental illness is in remission, Rottinghaus does not have a mental disease or defect as to cause him to be dangerous to himself or others and he is able to conform his conduct to the requirements of the law. However, Daniel recommended that Rottinghaus have a forensic monitor and that he continue treatment with a psychologist to modify his personality problems after his release.

The circuit court found that Rottinghaus presently has a mental disease that renders him dangerous to the safety of himself and others. The court found Pendurthi more credible than Daniel on the issue of whether Rottinghaus's mental illness is in remission. The court also found Pendurthi more credible regarding Rottinghaus's capacity to appreciate the criminality of his conduct and the capacity to conform his conduct to the requirements of the law. On July 23, 2009, the circuit court denied Rottinghaus's application for unconditional release. Rottinghaus appeals.

 When reviewing a judgment on an application for unconditional release, we will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.

*State v. Larrington,* 280 S.W.3d 178, 181 (Mo.App.2009). We exercise the power to set aside a judgment on the ground that it is against the weight of the evidence with caution and only with a firm belief that the decree of judgment is wrong. *Id.*

 A verdict of not guilty by reason of mental disease or defect supports an inference of continuing mental illness. *Greeno v. State,* 59 S.W.3d 500, 504 (Mo. banc 2001). The Constitution, therefore, allows a person who has been found not guilty by reason of mental disease or defect to be confined in a mental institution "until such time as he has regained his sanity or is no longer a danger to himself or society." *Id.* (citing *Jones v. United States,* 463 U.S. 354, 370, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)).

In Missouri, the statutory standard for unconditional release is found in section 552.040.9, RSMo 2000, which provides:

> No committed person shall be unconditionally released unless it is determined through the procedures in this section that the person does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others.

The procedure for a hearing on an application for unconditional release is governed by section 552.040.7. It requires the circuit court to consider the following factors in addition to any other relevant evidence in determining if the committed person should be unconditionally released:

> (1) Whether or not the committed person presently has a mental disease or defect;
>
> (2) The nature of the offense for which the committed person was committed;

(3) The committed person's behavior while confined in a mental health facility;

(4) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(5) Whether the person has had conditional releases without incident; and

(6) Whether the determination that the committed person is not dangerous to himself or others is dependent on the person's taking drugs, medicine or narcotics.

§ 552.040.7.

Because Rottinghaus was committed upon acquittal on the grounds of mental disease or defect excluding responsibility for murder in the second degree, which is a "dangerous felony" as defined in section 556.061(8), RSMo Cum.Supp.2009, section 552.040.20 further provides that Rottinghaus:

shall not be eligible for conditional or unconditional release under the provisions of this section unless, in addition to the requirements of this section, the court finds that the following criteria are met:

(1) [Rottinghaus] is not now and is not likely in the reasonable future to commit another violent crime against another person because of [his] mental illness; and

(2) [He] is aware of the nature of the violent crime committed against [the victim] and presently possesses the capacity to appreciate the criminality of the violent crime against [the victim] and the capacity to conform [his] conduct to the requirements of law in the future.

 Moreover, section 552.040.7(6) provides that the burden of persuasion is on the party seeking unconditional release to prove by clear and convincing evidence that the committed person does not have,

and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others. "Clear and convincing evidence is evidence that instantly tilts the scales in the affirmative when weighed against the opposing evidence and that leaves the fact finder with the abiding conviction that the evidence is true." *Grass v. State*, 220 S.W.3d 335, 339 (Mo. App.2007).

Rottinghaus recognizes all these standards but asserts that the Eighth Circuit Court of Appeals in *Revels v. Sanders*, 519 F.3d 734 (8th Cir.2008) reversed the burden of persuasion when it held that sections 552.040.7 and 552.040.9 denied an insanity acquittee, who sought an unconditional release, due process of the law under the United States Constitution. According to Rottinghaus, the burden of persuasion is now upon the State to prove by clear and convincing evidence that he has a mental disease or defect rendering him dangerous to the safety of himself or others. Indeed, even the circuit court concluded that the *Revels* case called into question the validity of placing the burden of persuasion upon Rottinghaus, and the circuit court placed the burden upon the State to prove by clear and convincing evidence that Rottinghaus still suffers from a mental illness rendering him dangerous to the safety of himself or others. We disagree with the shifting of this burden.

In *Revels*, the petitioner appealed the denial of his petition for a writ of habeas corpus in which he challenged the Missouri Court of Appeals' denial of his application for unconditional release. *Id.* at 735. The Eighth Circuit Court of Appeals granted a conditional writ of habeas corpus because it concluded that the Missouri Court of Appeals violated Revel's due process rights by imposing on him an evidentiary

burden contrary to United States Supreme Court precedent. *Id.* In particular, the *Revels* court found that the Missouri Court of Appeals unreasonably applied the United States Supreme Court's opinion in *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), in determining that the State could continue to confine Revels based on future dangerousness alone. *Revels,* 519 F.3d at 743–44.

The Supreme Court held in *Foucha* that "Louisiana's statutory release provision, which provided that the state could continue to confine indefinitely an acquittee in a mental facility who, although not mentally ill, might be dangerous to himself or to others if released," violated due process. *Revels,* 519 F.3d at 741 (citing *Foucha,* 504 U.S. at 73, 77, 112 S.Ct. 1780). The *Foucha* court concluded that "the statute violated due process because such an 'acquittee may be held as long as he is both mentally ill and dangerous, but no longer.'" *Revels,* 519 F.3d at 741 (quoting *Foucha,* 504 U.S. at 77, 112 S.Ct. 1780). Thus, pursuant to *Foucha,* "an application for release of an insanity acquittee has two components: (a) a present mental illness and (b) dangerousness stemming from that illness." *Revels,* 519 F.3d at 741 (citing *Foucha,* 504 U.S. at 77, 112 S.Ct. 1780).

■ Based upon the Supreme Court's holding in *Foucha,* the *Revels* court concluded that the rule, "that a state may continue to hold an insanity acquittee who seeks unconditional release even if he *is not* presently mentally ill, must be rejected." *Id.* at 742. The *Revels* court stated: "*[O]nce an insanity acquittee has shown the absence of a present mental illness,* his continued confinement constitutes 'punishment,' which *Foucha* expressly rejected as a proper basis for the confinement of one who is not criminally responsible for his criminal actions." *Id.* at 742–43 (citing *Foucha,* 504 U.S. at 80, 112 S.Ct. 1780)

(emphasis added). Clearly, the *Revels* court did not reverse the burden of persuasion as Rottinghaus contends and as the circuit court found. Even after *Revels,* the burden of persuasion remains on the party seeking unconditional release to prove by clear and convincing evidence that he does not have a mental disease or defect rendering him dangerous to the safety of himself or others. According to *Revels,* if an insanity acquittee proves by clear and convincing evidence that he does not have a mental disease, then he is entitled to unconditional release. *Id.* at 742–43.

■ But, even if *Revels* had reversed the burden of persuasion, we are not bound to follow the Eighth Circuit's decision. *State v. Storey,* 901 S.W.2d 886, 900 (Mo. banc 1995). Indeed, we are constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court. *State v. Aaron,* 218 S.W.3d 501, 511 (Mo.App.2007); Mo. Const. art. V, § 2. The Missouri Supreme Court has said:

A verdict of not guilty by reason of insanity establishes that the person committed a criminal act and that he or she committed the act because of mental illness. When a criminal defendant establishes that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society. So long as the ... presumption of continuing mental illness has not been broken following an acquittal by reason of insanity, the burden of proof need not shift to the state.

*Greeno,* 59 S.W.3d at 504 (citation omitted); *see also State v. Tooley,* 875 S.W.2d 110, 113 (Mo. banc 1994). The *Greeno*

court determined that the insanity acquittee also bore the burden of proving by clear and convincing evidence that he would not be dangerous to others if released. *Greeno,* 59 S.W.3d at 504–05.

We, therefore, will consider Rottinghaus's point on appeal in light of this burden of persuasion and determine whether the circuit court's judgment denying Rottinghaus's application for unconditional release was against the weight of the evidence, or erroneously declared or applied the law.

■ In support of his contention that substantial evidence did not support the circuit court's judgment that Rottinghaus currently suffers from a mental disease or defect, Rottinghaus relies on the testimony of Doctor A.E. Daniel. Daniel opined that Rottinghaus's current diagnosis is "Bipolar Affective Disorder I, most recent episode, Manic (1997) in Full Remission." The State's expert, Doctor Kavita Pendurthi, however, testified that Rottinghaus currently suffers from bipolar disorder and that the illness is not in remission. The circuit court found Pendurthi more credible than Daniel and found that clear and convincing evidence established that Rottinghaus still suffered from a mental illness. Moreover, Pendurthi and Coe–Gilmore testified that Rottinghaus is a danger to himself and others because of his mental disease, and they pointed to several behaviors and incidents supporting this conclusion. Pendurthi testified that she would not even recommend that Rottinghaus be placed in a minimum security facility let alone recommend unconditional release. She said that at the current intermediate security facility she does not even recommend Rottinghaus for unescorted "grounds passes" because Rottinghaus is not dependable and trustworthy. Pendurthi said that, even in the ward with staff watching him, Rottinghaus is able to get to other patients and injure them. Daniel testified that the 1997 criminal offenses were the last reported dangerous or unlawful acts committed by Rottinghaus, but the circuit court found that the experts' testimony and the documentary evidence established otherwise. "[W]hether the evidence is 'clear and convincing' relies in large part upon credibility issues, which we leave to the circuit court, which had an opportunity to observe the witnesses in light of the surrounding circumstances." *State v. Gratts,* 112 S.W.3d 12, 19 (Mo.App. 2003).

In making its determination to deny Rottinghaus's request for unconditional release, the circuit court considered all of the factors outlined in section 552.040.7. Substantial evidence supported the circuit court's findings on all of these factors.

The first factor considered by the circuit court was whether or not Rottinghaus presently has a mental disease or defect. § 552.040.7(1). The evidence established that both Pendurthi and Daniel testified that Rottinghaus presently has the mental illness of bipolar disorder. Daniel merely opined that the illness was in remission. The circuit court, however, found that, with regard to whether Rottinghaus's mental disease was in remission, Pendurthi was more credible than Daniel.

The second factor considered by the circuit court was the nature of the offense for which Rottinghaus was committed. § 552.040.7(2). As noted previously, Rottinghaus while in a manic state broke into neighboring houses, threw and destroyed items from those houses, assaulted a woman by stabbing her, and stabbed and killed a man trying to assist the woman.

The third factor considered by the circuit court was Rottinghaus's behavior while confined in a mental health facility. § 552.040.7(3). The testimony of Pendurthi and Coe–Gilmore established that

Rottinghaus continues to display mood instability and related hostility, verbal aggression, paranoia, impulsivity, and over reaction to minor incidents. Moreover, Rottinghaus has refused to take medications and is not compliant with recommended treatment.

The fourth factor considered by the circuit court was the elapsed time between the hearing and the last reported unlawful or dangerous act. § 552.040.7(4). The hearing in this case took place on February 20, 2009. Pendurthi testified that, in February, Rottinghaus got mad at his roommate and punched his roommate in the leg and scratched his neck. In September 2008, Rottinghaus became disruptive and was yelling at a peer and would not stop until staff stepped between Rottinghaus and the peer. In 2006, Rottinghaus rushed a peer with his arms raised, and support staff had to separate the two clients. In 2006, Rottinghaus pushed a staff member who intervened in a verbal altercation which Rottinghaus had with another peer. Also, in 2006, Rottinghaus engaged in a verbal argument with a peer that then required additional staff for safety. In 2005, Rottinghaus pulled his roommate's hair. In 2003, Rottinghaus punched a peer and cursed, hit, and kicked staff.

The fifth factor considered by the circuit court was whether Rottinghaus has had previous conditional releases without incident. § 552.040.7(5). The evidence established that Rottinghaus has not had any conditional releases since he was committed to the Department of Mental Health.

Finally, the sixth factor considered by the circuit court was whether the determination that Rottinghaus is not dangerous to himself or others is dependent on Rottinghaus's taking drugs, medicine, or narcotics.[1] § 552.040.7(6). Pendurthi testified that Rottinghaus is a danger to himself and others. She said that she has prescribed medication to treat the symptoms of Rottinghaus's bipolar disorder but that Rottinghaus refuses to take the medication. The criminal incidents for which Rottinghaus was committed to the Department of Mental Health occurred while Rottinghaus refused to take prescribed medication. Rottinghaus even denies that he has a mental illness according to Coe-Gilmore.

In addition to these six factors, because Rottinghaus was committed upon acquittal on the grounds of mental disease or defect excluding responsibility for murder in the second degree, which is a "dangerous felony," the circuit court also considered whether (1) Rottinghaus "is not now and is not likely in the reasonable future to commit another violent crime against another person because of [his] mental illness," and (2) he is aware of the nature of the violent crime he committed and presently possesses the capacity to appreciate the criminality of the violent crime[2] and the capacity to conform his conduct to the requirements of law in the future. *See* § 552.040.20. At the

---

1. Rottinghaus asserts that the circuit court relied solely on his refusal to take medication as dispositive of the issue of dangerousness and that, pursuant to *Jensen v. State*, 926 S.W.2d 925, 928 (Mo.App.1996), it was error for the circuit court to rely solely on that evidence. Indeed, in Jenson, the court held that the fact that a person has to take medication to control his mental illness cannot be the sole basis for denying the individual's request for unconditional release. *Id.* at 928.

Contrary to Rottinghaus's assertion, the circuit court considered multiple factors in making its determination concerning dangerousness, including Rottinghaus's aggressiveness and hostility in multiple incidents.

2. There is no dispute that Rottinghaus is aware of the nature of the crimes that he committed and that he appreciated the criminality of those crimes.

hearing, both Pendurthi and Coe–Gilmore testified that Rottinghaus has a mental disease that renders him dangerous to the safety of himself or others. Pendurthi also said that Rottinghaus does not have the capacity to conform his conduct to the requirements of the law in the future. She said that, due to Rottinghaus's hypomanic state, she did not believe Rottinghaus could control his impulsivity. Although Rottinghaus's expert, Daniel, said that Rottinghaus "is not now and is not likely in the reasonable future to commit another violent crime" because his mental disease is in remission and that Rottinghaus could conform his conduct to the requirement of the law in the future, the circuit court did not find Daniel's testimony to be credible.

Given all this evidence, we find substantial evidence supported the circuit court's judgment denying Rottinghaus's application for unconditional release. Rottinghaus did not establish by clear and convincing evidence that he does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others. § 552.040.9. While the circuit court erroneously shifted the burden of proof to the State as was advocated by Rottinghaus, the circuit court correctly concluded that, even under those parameters, Rottinghaus was not entitled to an unconditional release. We, therefore, affirm the circuit court's judgment.

All concur.